AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Frank Ramos-Arteaga | ) | Case No. 3:22-mj-71504 MAG |
| | ) | |
| *Defendant(s)* | ) | |

**FILED**
Nov 22 2022
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  October 12 and October 27, 2022  in the county of  San Francisco  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Distribution and possession with intent to distribute a Schedule II controlled substance |
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) | Distribution and possession with intent to distribute 50 grams and more of a mixture or substance containing methamphetamine |
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) | Distribution and possession with intent to distribute 40 grams and more of fentanyl |

This criminal complaint is based on these facts:

See attached affidavit of DEA Task Force Officer Alexis Gomez

☑ Continued on the attached sheet.

Approved as to form  /s/ Kelsey Davidson
AUSA  Kelsey Davidson

/s/ Alexis Gomez
*Complainant's signature*

Alexis Gomez, DEA Task Force Officer
*Printed name and title*

Sworn to before me by telephone.

Date: 11/22/2022

*Judge's signature*

City and state:  San Francisco, California    Hon. Alex G. Tse, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Alexis Gomez, a Task Force Officer of the Drug Enforcement Administration ("DEA"), being duly sworn, hereby declare as follows:

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant charging Frank RAMOS-ARTEAGA ("RAMOS-ARTEAGA") with (1) one count of distribution and possession with intent to distribute a Schedule II controlled substance, namely fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), on or about October 12, 2022; (2) one count of distribution and possession with intent to distribute 50 grams and more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), on or about October 12, 2022; (3) one count of distribution and possession with intent to distribute a Schedule II controlled substance, namely methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), on or about October 27, 2022; and (4) one count of distribution and possession with intent to distribute 40 grams and more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), on or about October 27, 2022.

2. This affidavit is submitted for the limited purpose of demonstrating probable cause for the issuance of the requested complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to support the criminal complaint and lawful arrest of RAMOS-ARTEAGA.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, and information provided by records and databases. I believe these sources to be reliable. Where I refer to conversations and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. Unless otherwise noted, wherever in the affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. This affidavit also reflects my current

understanding of facts relating to this investigation; however, my understanding may change in the future as the investigation proceeds.

## AFFIANT BACKGROUND

4.     I am employed by the San Francisco Police Department as a Police Officer and have been so employed since October 2015.  I am currently assigned to the San Francisco Police Department's Narcotics Division, and I am assigned to investigate narcotic trafficking offenses.  I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) within the San Francisco Divisional Office in California.  I have been assigned as a DEA TFO since May 2022.

5.     I graduated from the San Francisco Police Department academy in June 2016.  In the police academy, I received numerous hours of narcotics related training.  I also attended the San Francisco Police Department Detective School where I received additional narcotics investigations training.  The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations.  Below is a list of courses I have successfully completed that are relevant to my job duties including narcotics related arrests, investigations, and search warrants: NCRIC's 16-hour Search Warrants A-Z BATI's 40-hour Investigative Interview and Interrogation Techniques, HIDTA's 8-hour Gangs and Narcotics, HIDTA's 8-hour Search Warrants and Narcotic Investigations, RxSAFE MARIN's 4.5-hour Northern California Opioid Conference and Training, CNOA's 40-hour 57th Annual Training Institute, HIDTA's 8-hour Methamphetamine Investigations and Response, HIDTA's 8-hour Street Crimes, Narcotic Enforcement, and the Law, WRCTC's 8-hour Operational Red Flags for Narcotics Investigations, HIDTA's 16-hour Criminal Drug Gang Investigations, WRCTC's 9-hour Fentanyl Safety, Investigations and Decontamination, HIDTA's 8-hour Undercover Social Media Investigations, HIDTA's 16-hour Drug Identification Course, and Graves & Associates 8-hour Drug Induced Homicide Investigations.

6. During the course of my employment as a Police Officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources, and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, physical surveillance. I have also assisted in court ordered wiretap investigations and in the execution of numerous federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of controlled substances.

7. Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. By virtue of my training and experience, and through my conversations with other agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

8. I have participated in the investigation discussed in this Affidavit. I have also discussed the investigation with other DEA Special Agents and with other law enforcement agencies involved in it. I have reviewed records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.

9.     I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug trafficking.

## APPLICABLE LAW

10.    Title 21, U.S. Code § 841(a)(1) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

11.    Title 21, U.S. Code § 841(b)(1)(C) provides in relevant part: "In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . ."

12.    Title 21, U.S. Code § 841(b)(1)(B)(viii) provides in relevant part: "In the case of a violation of subsection (a) of this section involving 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years. . . ."

13.    Title 21, U.S. Code § 841(b)(1)(B)(vi) provides in relevant part: "In the case of a violation of subsection (a) of this section involving 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . ."

## FACTS ESTABLISHING PROBABLE CAUSE

14.    While working at the Tenderloin Station and the Narcotics Division, I became aware of RAMOS-ARTEAGA due to his various narcotics related arrests and contacts with the police.  Beginning in October 2022, undercover officers began contacting RAMOS-ARTEAGA in order to coordinate controlled purchases of narcotics from him.

*October 7, 2022 Controlled Purchase of Methamphetamine*

15. On October 7, 2022, I was on duty when I observed RAMOS-ARTEAGA standing at the northwest corner of Ellis Street at Hyde Street in the Tenderloin District of San Francisco. At approximately 3:00 p.m., an SFPD officer who is also a DEA Task Force Officer was working in an undercover capacity to purchase narcotics at the street level. The undercover officer drove an unmarked police vehicle to the northwest corner of Ellis and Hyde Streets and nodded his head while making eye contact with RAMOS-ARTEAGA. RAMOS-ARTEAGA nodded his head back at the undercover officer and walked to the passenger side window of the undercover officer vehicle which was open.

16. The undercover officer asked RAMOS-ARTEAGA if he had crystal, which is a street term for methamphetamine. RAMOS-ARTEAGA said yes and told the undercover officer to drive his car a little farther westbound on Ellis Street. The undercover officer drove a few car lengths further westbound and double parked his car. RAMOS-ARTEAGA walked away westbound on the north sidewalk of Ellis Street out of surveillance officers' view for approximately 40 seconds.

17. RAMOS-ARTEAGA returned to the passenger side window of the undercover officer's vehicle and handed him suspected methamphetamine. The undercover officer handed RAMOS-ARTEAGA $40. RAMOS-ARTEAGA then told the undercover officer to take down his number. RAMOS-ARTEAGA verbally provided the number, and the undercover officer called the number in front of RAMOS-ARTEAGA and asked RAMOS-ARTEAGA if he had received the phone call. RAMOS-ARTEAGA said he did.

18. The undercover officer then asked RAMOS-ARTEAGA if he had "fetty", which is a street term for fentanyl. RAMOS-ARTEAGA said that he did, and the undercover officer told RAMOS-ARTEAGA that he would contact him in the near future to purchase fentanyl.

19. At the Narcotics Office, I weighed the suspected methamphetamine at 2.2 grams net. I then utilized the TruNarc Analyzer to field test the suspected methamphetamine, which tested presumptive positive for the presence of methamphetamine.

*October 12, 2022 Controlled Purchase of Fentanyl and Methamphetamine*

20. On October 11, 2022, the undercover officer contacted RAMOS-ARTEAGA via text message to negotiate a controlled purchase for methamphetamine for the next day in San Francisco. On October 12, 2022, the undercover officer asked RAMOS-ARTEAGA if he was in San Francisco, and RAMOS-ARTEAGA replied that he was in Oakland and asked the undercover officer to meet him there. The undercover officer also asked to purchase fentanyl, and they discussed prices for both the methamphetamine and fentanyl. The undercover officer then arranged to meet RAMOS-ARTEAGA at 3240 61st Ave, Oakland, California.

21. RAMOS-ARTEAGA arrived at the buy location and got out of a Kia Optima and got into the undercover officer's vehicle. RAMOS-ARTEAGA gave the undercover officer one clear plastic bag with two ounces of suspected methamphetamine and one clear plastic bag with one ounce of suspected fentanyl. The undercover officer gave RAMOS-ARTEAGA $700 in exchange.

22. At the Narcotics Office, I weighed the suspected methamphetamine at approximately 58.2 grams gross, and I weighed the suspected fentanyl at approximately 30.0 grams gross. I then utilized the TruNarc Analyzer to field test the suspected narcotics. The suspected methamphetamine tested presumptive positive for the presence of methamphetamine. The suspected fentanyl tested presumptive clear, mannitol.[1] I sent the fentanyl for further testing to the Alameda County Sheriff's Office Crime Lab, which determined that the suspected fentanyl contained fentanyl. The Crime Lab also determined that the methamphetamine weighed 56.02 net grams and the fentanyl weighed 28.73 net grams.

*October 27, 2022 Controlled Purchase of Fentanyl and Methamphetamine*

23. On October 27, 2022, I, along with other officers, observed RAMOS-ARTEAGA drive from Oakland to San Francisco. Once RAMOS-ARTEAGA was in the Tenderloin, the undercover officer text messaged RAMOS-ARTEAGA to set up a narcotics purchase at Hyde and

---

[1] Based on my training and experience, I know that "Mannitol" is used by narcotics dealers as a cutting agent to stretch their product and maximize profits.

Geary Streets. At the time of this conversation, there was a heavy uniformed police presence in the area of Ellis and Hyde Streets due to a call for service. RAMOS-ARTEAGA walked to Hyde and Geary Streets and saw SFPD officers who were in an unmarked van. RAMOS-ARTEAGA looked at the officers inside the van and texted the undercover officer never mind and to just come to Oakland. The undercover officer agreed.

24. At approximately 7:43 p.m., RAMOS-ARTEAGA arrived at the buy location in Oakland. RAMOS-ARTEAGA got into the undercover officer's vehicle and gave the undercover officer two ounces of suspected methamphetamine and two ounces of suspected fentanyl. The undercover officer gave RAMOS-ARTEAGA $980 in exchange.

25. After the buy, I weighed the suspected fentanyl at approximately 58.3 grams gross and the suspected methamphetamine at approximately 57.8 grams gross. I then utilized the TruNarc Analyzer to field test the suspected narcotics. The suspected methamphetamine tested presumptive positive for the presence of methamphetamine. The suspected fentanyl tested presumptive clear, mannitol.[2] The suspected fentanyl was subsequently sent to the Alameda County Sheriff's Office Crime Lab, which confirmed that the substance, weighing 55.81 net grams, contained fentanyl.

### *Additional Physical Surveillance*

26. Between October 20, 2022 and November 21, 2022, a vehicle associated with RAMOS-ARTEAGA was observed driving into and out of San Francisco on eleven different days, and on at least four of those days, SFPD officers observed RAMOS-ARTEAGA in the Tenderloin. Additionally, SFPD officers have observed RAMOS-ARTEAGA in the Tenderloin on other days. SFPD officers and I have also observed RAMOS-ARTEAGA enter or exit the same apartment in Oakland at least five times.

---

[2] Based on my training and experience, I know that "Mannitol" is used by narcotics dealers as a cutting agent to stretch their product and maximize profits.

## **CONCLUSION**

27. Based on the information set forth in this affidavit, as well as my training and experience, I respectfully submit that there is probable cause to believe that (1) on or about October 12, 2022, in the Northern District of California, RAMOS-ARTEAGA distributed and possessed with intent to distribute a Schedule II controlled substance, namely fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) on or about October 12, 2022, in the Northern District of California, RAMOS-ARTEAGA distributed and possessed with intent to distribute 50 grams and more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); (3) on or about October 27, 2022, in the Northern District of California, RAMOS-ARTEAGA distributed and possessed with intent to distribute a Schedule II controlled substance, namely methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (4) on or about October 27, 2022, in the Northern District of California, RAMOS-ARTEAGA distributed and possessed with intent to distribute 40 grams and more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi).

Dated: November 22, 2022           */s/ Alexis Gomez*
                                   Alexis Gomez
                                   Task Force Officer
                                   Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 22nd day of November 2022.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

21 U.S.C. § 841(a)(1), (b)(1)(C)
21 U.S.C. § 841(a)(1), (b)(1)(B)(viii)
21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: 841(a)(1), (b)(1)(C) - 20 years' imprisonment, $1,000,000 fine, minimum 3 years maximum life supervised release
841(a)(1), b)(1)(B)(vi) and (b)(1)(B)(viii) - 5 minimum, max 40 years' imprisonment; $5,000,000 fine; 4 years- life supervised release
All - $100 special assessment, forfeiture, potential deportation

### DEFENDANT - U.S

▶ Frank Ramos-Arteaga

DISTRICT COURT NUMBER

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
DEA Task Force Officer Alexis Gomez

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  [ ] U.S. ATTORNEY   [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: Stephanie HInds
[ ] U.S. Attorney   [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Kelsey C. Davidson

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [X] If not detained give date any prior summons was served on above charges ▶ NA
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction   [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No
If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[ ] SUMMONS   [ ] NO PROCESS*   [X] WARRANT     Bail Amount: No bail

If Summons, complete following:
[ ] Arraignment   [ ] Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

Comments: